MARGUERITE DOTTY, ADMINISTRATRIX, &c., DEFENDANT IN ERROR, v. THE ATLANTIC CITY RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued March 13, 1900—Decided June 18, 1900.

D., sitting on the seat of a one-horse buggy-wagon, having its top down, and with no side curtains, drove his horse upon the tracks of a railroad crossing and was struck and killed by a passing passenger train. *Held*, that he was guilty of contributory negligence to be inferred from these conditions of fact, viz., if he took the precaution to look before attempting to cross, even though he did not stop, he had, at a distance of more than thirty feet from the track on which the approaching train was running, an unobstructed view of it for about two-fifths of a mile, for a period of time sufficient to enable him to stop his horse before reaching the tracks and escape the danger.

---

On error to the Supreme Court.

For the plaintiff in error, *J. Willard Morgan* and *Charles V. D. Joline.*

For the defendant in error, *Henry S. Scovel* and *William T. Boyle.*

The opinion of the court was delivered by

VREDENBURGH, J. At the jury trial of the action brought by the representative of the intestate to recover damages from the railroad company for the death of Henry Dotty, caused by his collision with the company's train, the trial justice denied the defendant's motion for a nonsuit, based upon the

ground of contributory negligence. Exception having been duly sealed and errors assigned, the correctness of this ruling is before us for review. If the proved circumstances, as they existed at the time of this motion, make the inference irresistible that in his attempt to drive over this surface crossing the intestate did not exercise such prudence as the law demands, the motion should have been granted. Those circumstances, so far as material, were these : On the afternoon of September 21st, 1898, the deceased was driving, on the "Warrick road" in a northeasterly direction, on his way to Magnolia station, in the county of Camden, New Jersey, a horse attached to an open, one-seated buggy-wagon, having no side curtains, and with its top down, and in attempting to cross the defendant's tracks at their intersection by the Warrick road, was struck by a passenger train of cars and killed. Warrick road is a public highway sixty feet wide, and its intersection with the westerly side of the right of way of the defendant is distant, under the weight of the evidence, about thirty-five feet westerly from the place of the collision. Growing corn from ten to twelve feet high stood about six feet westerly of defendant's right of way, measuring from the west side of that right of way. I think it is clear from the evidence that a person, whether walking, or driving in an open wagon, at the westerly edge of the defendant's right of way, could see in the direction of Magnolia station —the direction from which the train in question was coming—about two-fifths of a mile. So that if the deceased, approaching the crossing without stopping, and while even so near as twenty-seven feet from it, had looked up and down the tracks, he must have seen the coming train, wherever it then was, before his horse's head had come within about seventeen feet of the western track, and in time to stop his horse and avoid being struck by the train. The train could not have been running so fast that he could not see it. If it was running at the rate of five miles in four minutes (as stated in the brief of counsel of the defendant in error—a mile in forty-eight seconds), then it would take it at least

nineteen seconds to reach the crossing after it was first observed by a person looking out for it from the point above referred to. There is no evidence that the horse was not under control, and, it would seem, the conclusion is irresistible, that, had the deceased exercised the reasonable degree of prudence which the law requires on his approach to this "place of known danger," to use the apt expression of the opinion in *Swanson* v. *Central Railroad Co. of New Jersey*, 34 *Vroom* 605, in looking along the track as he drove towards the crossing he would have seen the train before it became too late to avoid being struck. His failure so to look has cost one life, but sympathy for that loss should not lead us to forget that his negligence might have cost many lives, nor induce us to relax the rules of law which, in this era of the public demand for rapid transportation of both passengers and freight, may protect the lives of countless others. In *Pennsylvania Railroad Co.* v. *Righter*, 13 *Id.* 180, where it appeared that the driver's field of observation of the tracks was confined, by obstructions, to a point within thirty feet of the track upon which the accident occurred, it was held by this court that a nonsuit should have been granted by the trial court. That decision has been followed by many others approving it, to which it is unnecessary here to refer.

The judgment below should be reversed.

*For affirmance*—None.

*For reversal*—MAGIE (CHANCELLOR), VAN SYCKEL, GUMMERE, LIPPINCOTT, LUDLOW, COLLINS, BOGERT, HENDRICKSON, ADAMS, VREDENBURGH, VOORHEES.    11.