JOSHUA S. JOYCE, PLAINTIFF IN ERROR, v. THE WEST JERSEY AND SEASHORE RAILROAD COMPANY, DEFENDANT IN ERROR.

Argued March 6, 1912—Decided June 20, 1912.

1. The plaintiff, seated in his wagon drawn by his horse, proceeded along the highway toward the defendant's railroad track where the highway and railroad crossed each other at grade; when his horse arrived at a point twenty-five feet distant from the track (between which point and the track, evidence, not open to serious dispute, showed there were no obstacles to his sight of any train approaching on his left side, for a distance of more than half a mile), he continued to drive his horse on a walk toward and upon the railroad track without looking in the direction of such train

until it was too late to escape collision with it, and it was *held* he had been guilty of such contributory negligence as was fatal to his right of recovery of damages from the defendant company.

2. The rule of legal caution, as established in this court, by the case of *Pennsylvania Railroad Co.* v. *Righter*, 13 *Vroom* 180, and adjudications following it, requiring a person about to drive across a railroad track at grade to look *each* way before crossing in order to guard against the approach of trains—*Held*, to control the decision of the case under review.

On error to the Supreme Court.

For the plaintiff in error, *David O. Watkins* and *John W. Wescott.*

For the defendant in error, *Gaskill & Gaskill.*

The opinion of the court was delivered by

VREDENBURGH, J.   This is an action for damages resulting to the plaintiff from a collision with defendant's cars at a road crossing.

The trial judge at the close of the evidence in this case, upon the motion of defendant for the direction of a verdict in its favor (urged upon the ground that the proofs had shown the plaintiff to have been guilty of contributory negligence), directed such verdict and to this ruling error has been assigned.

In deciding the motion the learned judge said he was unable to distinguish the case from the Righter case (*Pennsylvania Railroad Co.* v. *Righter*, 13 *Vroom* 180) ; that while there was some difference in the facts he could see no difference in the legal principles; adding that, "under the proofs, giving the plaintiff the most favorable view of it, he could have seen a train coming from his left when he was at a point at least twenty-five feet from the track, and that the undisputed proof is that he made no observation from that time."

With the correctness of these conclusions of the trial court, summarizing the pivotal facts of the evidence, and applying

to them the long established principles of law settled in the cited case, we entirely agree.

The Righter case was decided by this court in the year 1880, and the law of negligence applicable to what are called railroad-crossing accidents, then announced, has been ever since followed in cases, almost without number by our courts, and without dissent.

Our legislatures, sitting annually for the past thirty-two years, and having before them for that long period of time this pronouncement of the law relating to this important subject, have been content to leave that judicially made law unaltered and untouched.

If the doctrine of *stare decisis* is to be applied to the case in hand, presenting, as it does, substantially the same facts as the Righter case, it must be now regarded as controlling. This doctrine, says a recent authority (*Black on Judicial Precedents,* § 59), "is one of *surpassing* importance." It is, that "when a court has once laid down a principle of law as applicable to a certain state of facts, it will adhere to that principle and apply it to all future cases where the facts are substantially the same" * * * "and it is upon this basis that the whole elaborate structure of our case law has been built up."

In the Righter case this court, sitting in review of a judgment upon verdict in favor of the plaintiffs below, held, that the trial court erred and should have taken the case from the jury, and proceeded to define and declare rules of law applicable to that class of negligence, cases where accidents happen to the highway traveler from collisions with railroad trains upon road crossings at grade, as follows:

*First.* If it clearly appears that the plaintiff's negligent conduct contributed to his injury so that there remains no fairly debatable question that it did so contribute, the decision of the question is for the court and not for the jury.

*Second.* It is a primary rule of requisite legal caution that a person about to drive across a railroad is bound to use his eyes and ears, to watch for signboards and signals, to listen for bell and whistle, and to guard against the approach of

trains by looking *each* way before crossing; and that the failure of the railroad company to provide or give a statutory signal will not relieve a person from making this dual observation, if he has an opportunity, by a view of the road to avoid danger.

The plaintiff here admits that he disregarded this legal rule of caution, and that he did not look each way for a train before crossing the railroad track. He admittedly continued driving his horse toward the track after it had reached a point distant about twenty-five feet from the track, without looking in the direction from which the train was approaching him. His horse was actually upon the railroad track before he looked and saw the train, and the collision quickly followed. He thus neglected his opportunity to avoid danger by a view of the road from a place of safety. From that position and onward toward the crossing, it is not substantially disputed that there were no obstacles of a permanent or other nature to his view of the railroad track on his left, for more than half a mile.

Such place of safety was held in the Righter case to exist where the driver of the carriage was thirty feet distant from the railroad track. In the case of *Dotty, Adm'x,* v. *Atlantic City Railroad Co.,* 35 *Vroom* 710, this court, unanimously reaffirming the principles of the Righter case, held such place of safety existed where the driver was about thirty feet distant from the railroad track and his horse's head had come within about *seventeen* feet of the track.

In the case under review the evidence of the plaintiff himself justifies the conclusion that his horse's head must have been at least twenty-five feet distant from the track, and the driver (the plaintiff) about thirty-five feet distant therefrom. He had but to check his walking horse at this point and he would have been secure from collision with the train.

The line of judicial precedents, of which the cited cases are illustrations, compel us to the conclusion that the plaintiff in failing to look in the direction of the colliding train after his horse reached the place above described, and while

a sufficient opportunity was afforded him to look, was guilty of negligence which contributed to his injury.

A reference to some of the other circumstances of this case of more or less materiality, may be of use in distinguishing future suits of a like character. The plaintiff's horse was not afraid of the cars, and had, while attached to a milk wagon, been accustomed every morning for more than two years next preceding, to be driven by the plaintiff, and to meet this particular train at this crossing; the plaintiff admits he was thoroughly familiar with the running of that train, and that he would very frequently have to hold his horse up at this crossing until the train would go by. Sometimes the plaintiff would cross the track ahead of the train and sometimes behind it. The track was a single one located over a right of way which was sixty-six feet wide, at about its centre, leaving thirty-three feet on each side of the centre line. The highway road ('Salem avenue) over which the plaintiff was driving, was, there, at least fifty feet wide, and crossed the track upon the plaintiff's left-hand side, at an angle less than a right angle. Its precise angle is not expressly given in the testimony, but the defendant's blue print plan-Exhibit, in evidence, shows approximately the angle of the crossing, and that the railroad line to the left of the plaintiff (toward Paulsboro) ran straight for at least the distance of a mile after leaving the crossing. The train which struck the plaintiff's wagon was running at a speed of about twenty-five or thirty miles an hour. The plaintiff's claim that he was mistaken as to the fact that the train had previously passed the crossing that morning can, of course, have no materiality. It was his own mistake, and can furnish no lawful excuse for his failure to look before crossing.

It was testified by the plaintiff that *before* his horse reached the point, twenty-five feet from the railroad track, he looked for a train on his left, and that *until* he reached that place there were permanent obstructions to his view of the railroad track in that direction consisting of a telegraph pole and a one-story chicken house. The defendant's witnesses denied the correctness of the plaintiff's statements

that such obstructions prevented his view before his horse arrived at that point. This was the main subject of dispute at the trial. In the construction we place upon the plaintiff's case, this dispute as to his view *before* he arrived at this point becomes of no legal consequence.

The judgment below should be affirmed.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, VROOM, CONGDON, WHITE, TREACY, JJ. 15.

*For reversal*—None.